BRIGHT ET AL. *v.* LAKETON STATE BANK.

[No. 13,748. Filed February 21, 1930. Rehearing denied June 25, 1930.]

542

Slaymaker, Merrell, Ward & Locke and Plummer & Plummer, for appellants.

D. F. Brooks, for appellee.

McMahan, J.—Action by Laketon State Bank against Ernest L. Bright and the Federal Surety Company to recover on a bond executed by Bright as principal, and by the other defendant as surety, for faithful and honest discharge of the duties of Bright as cashier of the bank. From a judgment in favor of the plaintiff for $1,722.28, the defendants have appealed, and contend the court erred in its conclusions of law and in overruling their motion for a new trial.

The facts as found by the court are, in substance, as follows: Bright was cashier of the bank from July, 1923, to July, 1926; he gave a bond in the sum of $5,000, with the surety company as surety, conditioned that Bright would faithfully and honestly discharge his duties as cashier; the Farmer's Elevator Company, a corporation, operated an elevator at Laketon; on July 16, 1925, and prior thereto, said company was insolvent, and, on that

day, the Wabash Circuit Court appointed George C. Baker receiver therefor; Baker qualified as such receiver and took over the assets of the company, and, before noon on said day, went to the place of business of the bank and notified Bright as such cashier that he had been appointed receiver, and that he had taken over the management and control of the property and affairs of the elevator company; the elevator company, at that time, had an account with the bank with $158.01 to its credit, and, when Baker notified Bright of his appointment as receiver, Bright transferred the $158.01 to the account of Baker as receiver; at the time said account was so transferred, Baker, as receiver, borrowed of the bank $500, and issued to the bank a receiver's certificate therefor, and this $500 was also placed in the account to the credit of the receiver; when Bright received notice of the appointment of the receiver, and when the account of the elevator company was transferred to the receiver, there were outstanding checks, 11 in number, issued by the elevator· company, and aggregating $1,606.60; between July 16 and July 23, 1925, and, after the account of the elevator had been transferred to the receiver, said 11 checks were presented to the bank for payment, and were paid by Bright as cashier out of the money of the bank; after paying said checks, Bright charged them upon the books of the bank to the account of the receiver; each of said checks, except one for $18, was given in payment of merchandise for which the elevator company was justly liable; the $18 check was given for labor performed, and constituted a preferred claim against the receiver; the bank is liable to the receiver for the amount so paid out on said checks, and lost the amount so paid out, less the $18. The court found that the surety company was a surety on the bond, and that it is entitled to have the property of Bright first exhausted.

Upon these facts, the court concluded, as a matter of

law, that the plaintiff was entitled to recover from the defendants $1,722.28, and that the property of Bright should be exhausted before any levy should be made on the property of the surety company.

The errors assigned challenge the correctness of the conclusions of law and the action of the court in overruling the motion for a new trial.

The relation between the bank and the receiver was contractual, under which the bank assumed the risk of mispayment of checks not signed by the receiver. *Bank of Brunswick* v. *Thompson* (1917), 174 N. C. 349, 93 S. E. 849; *National, etc., Ins. Co.* v. *Mellon Nat. Bank* (1923), 276 Pa. St. 212, 119 Atl. 910. The appointment of the receiver for the elevator company brought the property of the elevator company, including the money on deposit in the bank, into the jurisdiction and custody of the court, and the bank, after notice of such appointment had no right or authority to pay checks theretofore issued by the elevator company out of the money on deposit in the name of the elevator company, or in the name of the receiver. The insolvency and the appointment of a receiver for the drawer of a check revokes the authority of the payee to collect it and of the bank to pay it, except that if the bank pays it in good faith, without notice, it is protected.

In support of the contention that the court erred in its conclusions of law, appellants contend that, under the facts, the bank became the equitable owner of the checks which had been paid by Bright as cashier after notice of the appointment of the receiver, and that, as such owner, it could, in an action by the receiver, set off against any claim made by the receiver on account of said checks, the claims the holders of such checks would have had against the receiver if the checks had not been paid by Bright out of the funds of the bank, and that, since the elevator company was

liable for the amount of the checks, the receiver could not escape such liability because of the mistake of Bright in paying them. The inference to be drawn from this contention is that it is the theory of appellants that the bank had no right to maintain this action until after it had filed a claim against the receiver, and there had been a judicial determination of the extent of the liability of the bank to the receiver, taking into consideration the rights of the holders of the checks to a set-off against the claim of the receiver. It appears that Bright paid each of the several checks out of the money of the bank, and thereafter charged them against the account of the receiver, by reason of which the bank became liable to the receiver for the amount so charged against the account. Bright as cashier had no right or authority to pay the checks. His act in paying them was wrongful. By so paying them, he failed to faithfully perform his duties as cashier, thus committing a breach of his bond, and a cause of action immediately arose in favor of the bank against the cashier and the surety company on the bond of such cashier. It was the duty of the bank upon discovery of the wrongful conduct of its cashier in charging the amount of the checks against the account of the receiver to correct that error and charge the amount off that account. When the account in the bank was transferred from the elevator company to the receiver, the bank contracted with the receiver that it would pay the money out on his check, and on none other. It had no right to charge any part of any of the checks against the account of the receiver. It had no right to charge the $18 check to that account, but appellants are in no position to complain, because the court gave them credit for that amount upon the theory that it was a preferred claim. The court did not err in its conclusions of law.

Appellants' next contention is that the finding that

appellee had lost the amount of the checks paid by the cashier after the appointment of the receiver, and that it was liable to the receiver for such amount is not sustained by sufficient evidence. To sustain this contention, appellants say that, in order to sustain such finding, facts must appear in the record showing that appellee was compelled to pay the receiver the amount of the checks, or that it could be compelled to make such payment, and that every essential fact to establish the liability of appellee to pay the amount of the checks to the receiver should appear. We cannot concur in appellant's contention that the bank became the equitable owner of the checks so paid by its cashier. If the bank had ratified the acts of its cashier, there might be some merit in this contention. There is, however, no claim that the bank ratified such acts. The inference is that it repudiated the unwarranted acts of the cashier, and, having done so, it did not become the equitable owner of the checks.

The judgment is not only right under the facts as found by the court, but it is right under the evidence. Judgment affirmed.